

FILED
AUG 24 2001
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROBERT MAYEN,** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | SA 00-CA-487 WWJ |
| | § | |
| **SAN ANTONIO INDEPENDENT SCHOOL DISTRICT,** | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On April 3, 2001, the plaintiff, Robert Mayen, filed his Motion for Summary Judgment (Doc. No. 20). On the same day, the defendant, San Antonio Independent School District, filed its Motion for Summary Judgment and Brief in Support Thereof (Doc. No. 21). Various response and reply briefs were filed in relation to each party's motion for summary judgment (Doc. Nos. 22 - 26).

Having considered the pleadings and the applicable authorities, it is found that the defendant's Motion for Summary Judgment (Doc. No. 21) should be **GRANTED** in all respects. It is further found that the plaintiff's Motion for Summary Judgment (Doc. No. 20) should be **DENIED** in all respects. Accordingly, a separate judgment in favor of the defendant will issue concurrently with the issuance of this memorandum opinion.

### FACTUAL SUMMARY

This civil action arises out of an employment dispute between the plaintiff, Robert

33

Mayen, and the defendant, San Antonio Independent School District ("SAISD"). Mayen went to work for SAISD in May 1979, as a plumber. His official job classification was Journeyman II Plumber. In November 1997, Mayen suffered an on-the-job back injury. At that time, Mayen had been working for SAISD continuously for eighteen years. As a result of his back injury, Mayen was forced to take a leave of absence from work. Pursuant to SAISD's policies, Mayen requested a leave of absence from November 6, 1997 until November 6, 1998.

SAISD granted Mayen's request for a leave of absence, which was classified as a leave of absence without pay. On three later occasions, Mayen asked for, and received extensions to his original leave of absence. The last extension allowed the defendant to remain away from work until August 1, 1999.

After Mayen had been on leave for approximately four months, the defendant released his position and another employee was hired in his place. SAISD has a policy that gives employment preference to employees returning from leave over applicants for available positions for which they are qualified.

On July 28, 1999, Mayen filled out a Return to Work Request Form, which indicated that he was "fully recovered and [would] be able to assume all the responsibilities" of his job on August 2, 1999. Pl. Exh. 1(H). The request form was signed by Mayen and his doctor, O.L. Fikes, D.C. The form included a page, signed by Doctor Fikes, that outlined Mayen's capabilities to undertake various tasks required by his potential duties at SAISD.

Rebecca Kretzer was the individual in charge of determining whether the defendant could return to work and in what capacity. Kretzer reviewed Mayen's work request form and indicated to Mayen that the form appeared to internally contradict itself. While it indicated that he would

be able to return to work and assume all his responsibilities, the page that outlined his capabilities with respect to specific duties seemed to indicate that he would not be able to perform "all of the responsibilities" of his job.

Mayen then returned to his doctor and obtained a release that would meet with Kretzer's satisfaction. Subsequently, Mayen presented Kretzer with a revised release, and at that time, she granted him clearance to return to work.

After clearing Mayen to return to work, Kretzer called the plant department to inquire into job openings for which the defendant's training and experience would qualify him. She was told that there were no positions open in the classification of Journeyman Plumber. Instead, she was able to locate a position available as an Apprentice. The position of Apprentice pays a little over half of that paid by the position of Journeyman Plumber.

After first considering accepting the position of Apprentice, Mayen decided to decline it, and on February 23, 2000, Mayen resigned from SAISD.

**Mayen's Physical Condition**

In early August 1999, Mayen was given a full medical release to return to work. However, as a result of his 1997 injury, he continues to suffer some ill effects. In particular, he cannot bend or maneuver as well as he used to. He cannot enjoy recreation in the same way that he once did. He can no longer ride horses. He experiences some pain during sexual intercourse. He has some difficulties associated with working. He cannot bend and touch his toes, and he has some difficulty in putting his socks on in the morning. In spite of all these difficulties, Mayen does not consider himself disabled, signifying, as he has stated, that he does not consider himself

unable to work.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law underlying the claims in issue identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the moving party bears the burden of persuasion on an issue at trial, the burden is on the moving party to sustain that burden of persuasion as well as demonstrate the absence of a genuine dispute over a material fact. *See Celotex*, 477 U.S. at 331-2 (Brennan, J., dissenting). When the moving party does not bear the burden of persuasion on an issue at trial, the moving party may discharge his summary judgment burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party satisfies its summary judgment burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence presented by the non-moving party is insufficient for a reasonable jury to deliver a verdict in favor of that party, summary judgment should be entered. *See Anderson*, 477 U.S. at 250-1.

## DISCUSSION

### I. AMERICANS WITH DISABILITIES ACT CLAIMS

#### A. *Unfair Treatment/Discriminatory Work Environment Claim*

The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., provides substantial non-discrimination protections to individuals with disabilities. Title I, which covers employment discrimination, provides protection to qualified individuals with a disability. 42 U.S.C. § 12112(a). The Act defines a disability, with respect to an individual, as a "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Major life activities can be various. Regulations promulgated by the EEOC define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2000).

Whether something substantially limits a major life activity can be a difficult question. However, prior precedent and EEOC guidelines have provided some guidance. In particular, 29 CFR § 1630.2(j)(1) states that "substantially limits means: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which the average person can perform

that same major life activity." 29 CFR § 1630.2(j)(1) (2000).

The defendant argues that there is no evidence in the record that shows that the plaintiff is disabled within the meaning of the ADA. The plaintiff responds with evidence that the plaintiff claims establishes his disability.

### 1. *Substantially Limited*

The plaintiff argues that he has a disability, because his physical condition substantially limits him in several major life activities. In particular, the plaintiff points to sexual activities, getting around, getting into or out of bed, carrying things, working, and dressing, as major life activities in which he is substantially limited.

Turning first to sexual activities, the only evidence tending to indicate that the plaintiff is substantially limited in performing sexual activities is the plaintiff's deposition testimony that he sometimes experiences pain during sexual intercourse. This evidence is insufficient to create a fact issue on substantial limitation. A person is substantially limited if they are either unable to perform the major life activity, or they are significantly restricted in the condition, manner, or duration under which the average person performs the major life activity. With respect to sexual activities, the plaintiff has pointed to no evidence of either situation. Based on the evidence in the record, no reasonable jury could determine that the plaintiff had carried his burden to show that he was significantly restricted as to the condition, manner, or duration of his sexual activities based on pain that he sometimes experiences, would require pure speculation.

Getting around, getting into or out of bed, and carrying things are the next major life activities pointed to by the defendant. Again, the plaintiff has pointed to no evidence in the

-6-

record suggesting either that he cannot engage in these activities, or that he is significantly restricted in the condition, manner, or duration that the average person can undertake these tasks.

Working is the next major life activity pointed to by the plaintiff. To be substantially limited in the major life activity of working, a plaintiff must, at a minimum, allege that he is "unable to work in a broad class of jobs" because of his impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). The plaintiff has not alleged that he is excluded from a broad range of jobs. In fact, the plaintiff has testified that his impairment has not affected his ability to work. The only evidence pointed to by the plaintiff is his medical release form from Dr. Fikes. Nothing in that form, however, indicates that the plaintiff would be excluded from a broad class of jobs.

Dressing is the last major life activity pointed to by the defendant. As evidence of his limitation with respect to dressing, the plaintiff indicates that he has difficulty in putting on his socks in the morning. However, based on this evidence, it would be impossible for a reasonable jury to conclude that the plaintiff had carried his burden in showing either that he cannot dress, or that he is significantly restricted in the condition, manner, or duration with which he can dress.

The plaintiff undoubtedly has a physical impairment. However, the plaintiff has not produced any evidence that raises a fact issue on the question of whether his impairment qualifies as a disability under the Americans with Disabilities Act. On the record before the Court, it would be impossible for a reasonable jury could find that the plaintiff is substantially impaired with respect to any major life activity.

### 2. Record of Impairment

The plaintiff second argues that he has a record of impairment. As evidence of his record of impairment, the plaintiff submits his leave of absence requests, the name of his impairment, and the fact that he was hospitalized in relation to his impairment. From this evidence, the plaintiff argues that a record of hospitalization reveals his disability, citing *Mark v. Burke Rehabilitation Hospital*. 1997 WL 189124 (S.D.N.Y. Apr. 17, 1997).

There is undoubtedly a record of physical impairment that is associated with the plaintiff. However, assuming that the plaintiff was disabled during the period of his hospitalization, he was not protected by the ADA during that period. To come within the protection of the Employment Title of the Act, the plaintiff must be a qualified individual with a disability. *See* 42 U.S.C. § 12112(a). That is, with or without reasonable accommodation, the plaintiff must be able to perform the essential functions of the job. *See* 42 U.S.C. § 12111. During his hospitalization and recovery period, there is no disputing that the plaintiff was unable to perform the essential functions of his job. Moreover, as discussed above, once he returned to work, there was no longer any record establishing that the plaintiff had an impairment substantially limiting any major life activity.[1]

---

[1] The Court is mindful of the fact that sometimes an individual with a disability will require short periods of hospitalization in association with that disability, and that in those instances, it may be the duty to accommodate the necessary leaves of absence. *See, e.g.,* 29 C.F.R. § 1630 App. at 357 (2000). Such a situation, however, is distinct from the plaintiff's case, wherein he became injured at work, had to leave work for a long period of time, and then returned to work with no expectation that he would ever have to leave again. In the instant case, the plaintiff had a discrete injury, which was totally disabling for a finite period of time, and after a finite period, the disabling effects of the injury were removed. In other words, for the entire period of what could be considered his disability, the plaintiff was not a qualified individual. It was only after the disabling condition was removed that the plaintiff was able to once again

### 3. *Regarded As*

The plaintiff finally argues that even if he is not actually disabled, and even if he has no record of impairment, that the defendant nonetheless regards him as disabled, thus bringing him within the protection of the ADA. The plaintiff points to the fact that the defendant was aware of his medical history and treatment, that the defendant, through Ms. Kretzer, inquired into possible restrictions on the plaintiff's ability to work, and that the defendant provided a leave of absence to the plaintiff as evidence that the defendant regarded the plaintiff as disabled.

The plaintiff argues that an employer's awareness of a plaintiff's medical history and treatment will establish genuine issues of fact on whether the employer regarded the employee as disabled, citing three cases from other circuits. The cases cited by the plaintiff are distinguishable from the instant case. In the cases cited by the plaintiff, the employer either stated outright that the employer found the disability to be substantially limiting, or the employer fixated on the limitations caused by the plaintiff's impairment. An employer's mere knowledge of an impairment has never been sufficient to establish regarded as disability. Certainly in the Fifth Circuit, mere knowledge of an impairment is insufficient to establish regarded as disability. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 322 (5th Cir. 1997).

The only evidence cited by the plaintiff to prove that the defendant thought the plaintiff's impairment was substantially limiting was the fact that there was some debate about the sufficiency of the plaintiff's medical release. However, the undisputed evidence is that the plaintiff ultimately obtained a full medical release, which was accepted by the defendant as

---

perform the essential functions of his job.

sufficient to allow the plaintiff to return to work. There is no evidence that the defendant disbelieved the second medical release. In fact, the only evidence relating to the matter is the testimony of Rebecca Kretzer and Jose Tafolla that when the second release was presented, the defendant began searching for a job into which they could put the defendant.

For the foregoing reasons, it is found that the plaintiff has failed to satisfy his burden to show that there is any evidence that would establish a genuine fact issue at trial on the question of the plaintiff's disability. Accordingly, it is found that the defendant does not come within the protection of the non-discrimination provisions of the Americans with Disabilities Act.

### B.   *Retaliation Claim*

The plaintiff also brings a claim against the defendant, alleging that the defendant retaliated against the plaintiff for asserting his rights under the Americans with Disabilities Act. The defendant claims that there is insufficient evidence in the record to support the plaintiff's claim.

The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. To show that he opposed an unlawful practice, the plaintiff must demonstrate at least that he had a reasonable belief that the employer's practice was unlawful.

To make out a prima facie case of ADA retaliation, the plaintiff must show that (1) he

engaged in a protected activity as defined under the ADA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121-2 (5th Cir. 1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. If the defendant provides this evidence, the burden then shifts back to the plaintiff to show that the proffered reason is merely pretextual.

The defendant argues that the plaintiff did not have a reasonable belief either that the employer had engaged in an unlawful employment practice, and that even if he did hold such a reasonable belief, the defendant argues that it had a legitimate, non-discriminatory reason for not returning Mayen to his previous position. The plaintiff argues that the alleged non-discriminatory reason was a mere pretext for discrimination.[2]

The defendant has submitted evidence that in the event that an employee takes medical leave, the employee's position will be released after a certain time, in the event that the defendant feels that it needs to fill the position. The defendant also submitted evidence that this policy was followed in reference to the plaintiff.

The defendant submitted additional evidence indicating that in the event that an employee takes military leave, the employee's position will be frozen until such time as the employee

---

[2] The plaintiff's pretext arguments actually do not appear to be made in response to the defendant's arguments on either of his retaliation claims. In fact, the plaintiff does not appear to respond at all to the plaintiff's argument that there is no genuine issue on his ADA retaliation claim. However, because the pretext arguments could be applicable to the defendant's retaliation arguments the Court will, in an abundance of caution, address the arguments concerning pretext in that relation.

-11-

returned. In particular, the defendant submitted evidence that at the time the plaintiff was ready to come back to work, the only available journeyman plumber position was frozen for the benefit of Guadalupe Garcia, an SAISD employee that was at that time on military leave.

The defendant's policy justification for freezing the positions of employees on military leave is that state and federal law require that those employees be returned to their same position or to positions of like seniority, status, or pay. The plaintiff disputes the defendant's characterization of the governing law. The plaintiff asserts that the governing law does not require the employer to freeze the military employee's position in his absence.

It is true that the defendant has pointed to no law that requires the freezing of the military employee's job while that employee is on leave. However, the law does require that the military employee be returned to a position of "similar seniority, status, and pay." TEX. GOV'T CODE ANN. § 613.002(a)(3)(B) (Vernon 1994). It is certainly plausible that the defendant would simply prefer, as a matter of policy, to freeze an employee's position, rather than to concern itself with finding a similar position for the serviceperson after his or her return. Moreover, the undisputed evidence is that the decision to hold open Garcia's position was made before Mayen requested to be placed in the position, and there is no reason to believe that the defendant was applying its policies any differently with respect to the plaintiff. The plaintiff has not adduced any evidence that would put in issue whether the defendant froze Garcia's job as a pretext for not returning Mayen to his job. Rather, the uncontroverted evidence is that the employer froze Garcia's job as a matter of inflexible policy, and that they had done this by the time Mayen came back. There is no evidence to suggest that Mayen suddenly lost an available position once he asserted his rights under the ADA, or any other statutory scheme.

Even assuming that the plaintiff could establish a *prima facie* case of retaliatory discrimination, nevertheless, because the defendant was able to provide a non-discriminatory reason for its action, and since the plaintiff failed to provide any evidence that the defendant's proffered reason was pretextual, the plaintiff's claim must fail as a matter of law.

## II. WORKER'S COMPENSATION RETALIATION CLAIM

To prove a claim for worker's compensation retaliation, the plaintiff must show that he was discharged or otherwise discriminated against because the employee filed a worker's compensation claim in good faith. TEX. GOV'T CODE ANN. § 451.001 (Vernon 1998). To establish a prima facie case of retaliation, the plaintiff needs to show a causal connection between the discrimination and the filing of the worker's compensation claim. *See Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 833 (Tex. App.-Austin 1992, writ denied). The filing of the claim need only be a contributing factor leading to the discrimination, it need not be the sole factor. *See id.* The plaintiff's subjective belief that he was discriminated against for filing a worker's compensation claim is insufficient support a cause of action. *See Continental Coffee Products Co. v. Cazarez*, 903 S.W.2d 70, 79 (Tex. App.-Houston[14th Dist.] 1995), *aff'd in part and rev'd in part by* 937 S.W.2d 444 (Tex. 1996).

In the instant case, the defendant asserts that there is no evidence linking discrimination on the part of SAISD with the plaintiff's filing of a worker's compensation claim. In fact, the defendant points out that the plaintiff admitted to knowing of several employees that were returned to their former positions after filing worker's compensation claims. The plaintiff has failed to respond to the defendant's arguments. Accordingly, the plaintiff has failed to sustain

his burden with respect to the claim of worker's compensation retaliation.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendant's Motion for Summary Judgment (Doc. No. 21) shall be, and is hereby, **GRANTED** in all respects. It is further

**ORDERED** that the plaintiff's Motion for Summary Judgment (Doc. No. 20) shall be, and is hereby, **DENIED** in all respects.

**SIGNED** this 23rd day of August 2001.

William Wayne Justice
Senior United States District Judge